IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>UDDOWLAH ASHRAF & SHAMIMA ASHRAF,<br><br>Debtors. | Chapter 7<br>Case No. 06-2606<br><br>MEMORANDUM DECISION |

**I. INTRODUCTION**

On August 29, 2006, Kerry Simms filed a "Motion to Dismiss Case and Order to Show Cause" ("Motion"). The Motion was filed by Kerry Simms ("Movant"), a creditor in the above-captioned case.[1] Frederick Simms, another creditor, also joined in the Motion to Dismiss. Movants requested dismissal of the Debtors' case pursuant to 11 U.S.C. § 707 (b). The Debtors filed a Response on October 5, 2006.[2] The Court held an initial hearing on October 10, 2006. At the hearing, the Court provided the Movants with the opportunity to amend their Motion to one under Section 727 or Section 523, but the Movants were adamant that they wished to proceed under Section 707(b). At this point, the Debtors were represented by counsel. However, an

---

[1] Kerry Simms was the original Movant in this matter. However, Mr. Kerry Simms was never sworn as a witness in these proceedings, although the Court inquired if he wished to be sworn to provide more information about any debts or obligations that might be owing to him.

[2] See Docket Entry No. 16.

1

Order was subsequently signed on November 13, 2006 allowing the Debtors' attorney to withdraw as counsel of record. On December 1, 2006, the Movants did an file an adversary complaint pursuant to Section 727, however, the Movants failed to pay the required filing fee, and the adversary proceeding was dismissed.[3] The Court held a trial on the Motion to Dismiss on February 14, 2007. At the conclusion of the trial, this matter was deemed under advisement.

This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334 and 157 (West 2007).
.

## II. FACTUAL BACKGROUND

On August 21, 2006, the Debtors filed their petition for relief under Chapter 7.[4] On January 26, 2007, an order dismissing only Shamima Ashraf, one of the Debtors herein, was entered for her failure to appear at the required 341 Creditor's Meeting.[5]

Mr. Fred Simms and Mr. Ashraf had met when the latter party worked for Lamps Plus and Mr. Simms worked as an electrician. It also appears that Mr. Hossain and Mr. Ashraf had known each other for quite some time.[6] Moreover, Mr. Fred Simms and the Ashrafs had engaged in at least one other transaction concerning the sale of stock. On June 17, 2005, Mr. Fred Simms paid Ms. Ashraf the sum of $30,000 to purchase her shares in a company known as

---

[3] See Adv. No. 2:06-ap-1024-SSC; Docket Entry No. 4.

[4] All references are to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), unless otherwise noted.

[5] See Docket Entry No. 35. Since Ms. Ashraf remained a debtor in this case for 5 months and since community property and community debts still remain a part of this proceeding, the Court shall refer to both of the Ashrafs, or the Debtors, in its analysis unless otherwise indicated.

[6] All the parties are also originally from Bangladesh.

2

Hi-Tech Lighting LLC[7]  Mr. Ashraf conceded at trial that the Debtors had received the funds in 2005, since he had endorsed the check for his wife and placed the funds in the Debtors' account. A review of the Schedules reflects, however, that Ms. Ashraf did not disclose this stock transfer as a part of her income in 2005.[8]  Mr. Ashraf explained this failure to disclose such income as the result of on-going litigation between the parties so he did not believe that the receipt of funds by the Debtors needed to be disclosed.  However, it is clear that this sale of stock, which benefitted the marital community by the sum of $30,000, was not disclosed by the Debtors.

In August 2005, the Movants, the Debtors, Mr. Samu Hossain and his spouse, and Mr. Taufik Islam and his spouse, formed FAKTS International, LLC d/b/a Lighting Plus ("Company" or "LLC").   As to the formation of the LLC, each of the parties, in exchange for shares in the Company,  made initial capital contributions except for the Ashrafs.  In lieu of making an initial capital contribution, Mr. Ashraf promised to invest his time and provide sales experience in exchange for shares in the Company.  The Debtors received 1/3 of the issued and outstanding stock in the LLC  at a value of $300,000.

In January 2006 the Company had a critical management meeting.  Mr. Islam and Mr. Hossain did not believe adequate notice had been given for the meeting and left in protest. At this meeting, Mr. Fred Simms was appointed Manager of the Company.  There was significant tension within the group as a result of Mr. Simms' appointment.  Mr. Ashraf, however, continued to work for the Company.  Moreover, it appears that Mr. Ashraf led Mr. Simms to believe that he would continue to work for, and remain loyal to, the Company.

Mr. Simms wanted to ensure that all operations of the Company, including the handling of cash, were done appropriately. In reviewing the Company's records, he discovered that Mr. Ashraf had been altering the Company's records in an attempt to conceal Mr. Ashraf's embezzlement of the Company funds to sustain his gambling habit.  At trial, Mr. Ashraf testified

---

[7] See Exhibits 4 and 7.

[8] See Docket Entry Nos. 1 and 14.

1 as to his gambling losses and did not deny that he improperly utilized Company funds to fund
2 his gambling habit.

3 In May 2006, Mr. Ashraf assigned almost his entire interest in the LLC to Mr.
Hossain for $1.00 (one dollar). As a result, Mr. Hossain obtained a controlling interest in the
Company. Mr. Fred Simms was removed as the Manager of the Company, and Mr. Hossain was
appointed the new Manager, effective May 5, 2006.[9] In the interim, Mr. Hossain and Mr. Islam
also commenced a lawsuit in the State Court with the intent of dissolving the Company, and on
July 28, 2006, the Superior Court entered such an order.

The Schedules prepared by the Debtors reflect that Mr. Hossain has maintained
the Debtors' books and records for a number of years, and that Mr. Hossain retains possession of
those documents.

## III. DISCUSSION

Under 11 U.S.C.A. § 707(b)(1), this case may be dismissed if the Court "finds
that the granting of relief would be an abuse of the provisions" of Chapter 7.[10] In re Pak, 343
B.R. 239 (Bankr.N.D.Cal 2006). The statute further provides that in considering whether the
granting of relief is an abuse of the provisions of Chapter 7, the court shall consider: "(A)
whether the debtor filed the petition in bad faith; or (B)[if] the totality of the circumstances ... of
the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A), (B); In re Pak,
343 B.R. 239 (Bankr. N.D. Cal 2006); In re Mitchell, 357 B.R. 142 (Bankr.C.D. Cal. 2006).

Prior to BAPCPA, the Court was required to find "substantial abuse," and the

---

[9] Exhibit 1.

[10] Section 707(b)(1) was modified as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 § 1233 (Apr. 20, 2005), effective as to all cases filed on or after October 17, 2005. As previously noted, this case was filed on August 21, 2006.

4

presumption was that the debtor was not engaged in abuse. With the enactment of BAPCPA, the term "substantial" was deleted from the statute. Thus, the threshold question for dismissal under Section 707 has changed from "substantial abuse" to simply "abuse." BAPCPA also deleted the presumption in favor of the debtor. <u>In re Batzkiel</u>, 349 B.R. 581 (Bankr.N.D.Iowa 2006). Prior to BAPCPA, only the judge presiding over the case and acting <u>sua sponte</u>, or the United States Trustee by filing a motion under section 707(b), could raise the issue of abuse. Now "any party in interest" may request dismissal of the case pursuant to section 707(b). The Debtors initially requested that the Motion be denied on the basis that as a creditor, the Movants lacked standing to prosecute the Motion to Dismiss. The Court concluded, at the hearing on October 10, 2006, that under the new provisions of the Code, the Movants had the standing to proceed with their Motion to Dismiss.

As alleged by the Movants, the Debtors' failure to list, or incorrectly list, relevant information in their Schedules is fatal, and should result in the dismissal of this case on the basis of abuse.. The Court will address each allegation separately.

**A. Failure to Disclose Civil Law Suits**

The Movants allege that the Debtors failed to disclose two current civil suits in which they are listed as Defendants. The Court has reviewed the Schedules, and while the Court agrees that the Debtors did fail to list all lawsuits pending against them at the time of filing, they did list three proceedings in their original schedules. The Debtors provided sufficient information to alert the Court that the Debtors were involved in significant litigation with a number of parties, including the Movants. The Debtors must provide full disclosure of all information that aids the Court in understanding their financial affairs and transactions. <u>In re Hammeken</u>, 316 B.R. 723 (Bankr.D.Ariz. 2004). All debtors are under the duty to provide complete and accurate information on their schedules. <u>In re Mckain</u>, 325 B.R. 95 (Bankr. D.

5

Neb. 2005). However, the Debtors have the opportunity to amend their schedules "as a matter of course at any time before the case is closed." <u>In re Pier</u>, 310 B.R. 347 (Bankr. N.D. Ohio 2004). In this case, the Debtors did, in fact, amend their schedules to reflect all relevant litigation.[11] Although the Movants are concerned that not every lawsuit has correctly stated the Court in which the litigation is pending or the case number assigned to the matter, the Court concludes that the information provided by the Debtors is sufficient to defeat a motion to dismiss on the basis of abuse.

### B. Failure to List Accurately Mr. Ashraf's Gambling Debt

The Movants allege that Mr. Ashraf inaccurately listed a $4,500 gambling debt. According to the Movants, the debt was incurred through the unauthorized use of the Company's debit card, and was not a "per se" liability of the Debtor. The Court disagrees. The unauthorized use of the Company's debit card would be an obligation that would normally devolve to a debtor. The Court concludes that the Debtor did properly include the obligation in his Schedules for which he should assume responsibility. Moreover, he also amended his Schedules to indicate the correct amount of the debt as $15,000.[12] However, Mr. Ashraf's improper use of the Company's debit card, coupled with the Debtors' filing of a bankruptcy petition shortly thereafter, are factors which the Court may consider in determining whether the filing of the bankruptcy petition was an abuse.

### C. Failure to List Accurately the Centrix Financial Debt

Again, the Movants allege that the Debtor inaccurately listed a debt as a personal debt, when the debt, in fact, was improperly incurred with the Company funds. As the Court noted above, the Debtor improperly utilized Company funds for which he should be personally

---

[11] Docket Entry No. 14.

[12] <u>Id.</u>

6

1  liable. He correctly acted with respect to this debt by listing it on his schedules. However, such
2  an improper use of the Company funds is a factor in whether the Debtors have engaged in
3  abusive conduct.

**D. Failure to Disclose Stock Transfer**

The Movants also argue that the Debtors' failure to disclose the stock transfer to Samu Hossain is grounds for dismissal of the case. According to the Movants, Mr. Ashraf transferred 29 of the 30 shares that he owned in the Company to Mr. Hossain for less than reasonably equivalent value. Mr. Ashraf transferred his shares for the stated consideration of one dollar ($1.00). The Movants argue that the stock was valued at $10,000 a share; hence, the transfer for less than reasonably equivalent value is endemic of the Debtors' abuse. The Court disagrees as to the valuation assertion. Based upon this Court's evaluation of the evidence, the value of the Company stock held by Mr. Ashraf at the time of the transfer was questionable. The Company was already in the process of being dissolved, as a result of the proceedings pending in the State Court, so the value of the shares at the time of the transfer was speculative at best. Furthermore, the Movants failed to present sufficient evidence to establish the value of the stock at the time of the transfer from which the Court might make factual findings.

However, the Court concludes that Mr. Ashraf's transfer of the stock shortly before he and his wife filed their bankruptcy petition, along with the concomitant failure to disclose the transfer on the Debtors' Schedules, reflect a pattern of abuse. Mr. Ashraf liquidated an asset that initially had a value of $300,000 a few months before he and his wife filed their bankruptcy petition, yet failed to disclose this information on his Schedules. There is no doubt that the transfer should have been disclosed. A debtor has a duty to prepare his schedules, filed in connection with a bankruptcy case, carefully, completely, and accurately. <u>Cusano v. Klein</u>, 264 F.3d 936 (9th Cir. 2001). A debtor's ability to amend his schedueles, for the purpose of

7

correcting prior mistakes and/or omissions, is limited to situations involving inadvertence, and does not extend to undoing prior transgressions, such as concealment of known information. In re Pier, 310 B.R. 347 (Bankr. N.D.Ohio 2004). Whether the debtor truly lacked knowledge about misinformation contained in his petition or schedules, such that this misinformation can be corrected by amendment, is determined based primarily on two considerations: (1) the extent and degree of misinformation; and (2) whether there existed a motive to provide the misinformation. Id. at 358.

In this case, when the various members of the LLC initially had a management dispute in January 2006, Mr. Fred Simms assumed control of the Company. He assumed that Mr. Ashraf was loyal to, and would not take any detrimental action with respect to, the Company. Of course, the evidence reflects that Mr. Ashraf manipulated his position of trust and confidence to loot the Company funds to cover his gambling debts. At the same time, Mr. Ashraf was also utilizing Mr. Hossain to maintain the Debtors' books and records and entrusted said documents to Mr. Hossain. The close connection between Mr. Hossain and Mr. Ashraf was also shown by Mr. Ashraf's subsequent transfer of substantially all of his stock in the LLC to Mr. Hossain and Mr. Hossain's prompt removal of Mr. Fred Simms as the manager of the Company. Mr. Ashraf knew exactly what he was doing. There is no doubt that the transfer of Mr. Ashraf's stock is suspect. As noted previously, the Court concludes that Mr. Ashraf's transfer of his shares to Mr. Hossain shortly before the Debtors filed their bankruptcy petition, and the failure to disclose this transfer on the Schedules, are an appropriate factual predicate for the Court to find abuse under Section 707(b)(1).

**E. Failure to Disclose Additional Income**

The Court also has concerns regarding the additional income received by Ms. Ashraf that was not disclosed on the Debtors' Schedules. As noted previously, on June 17, 2005,

8

Mr. Fred Simms paid Ms. Ashraf the sum of $30,000.[13] This amount was apparently compensation for the acquisition of shares in another Company, Hi-Tech Lighting L.L.C.[14] The Debtors failed to disclose this information on their schedules and on their tax returns. In re Hudson, 64 B.R. 73 (Bankr.N.D.Ohio1986) (continuing discrepancies in a debtor's schedules will place into question a debtor's honesty and credibility). According to the Debtor, he and his wife did not list the $30,000 in their schedules and tax returns because Mr. Simms had initiated legal proceedings for the return of the funds. This argument makes no sense. The point is that the Debtors believed that Mr. Simms paid the $30,000 to acquire Ms. Ashraf's interest in stock. As such, she received income on behalf of the community that should have been disclosed. Regardless, the omission of this additional income also provides a basis for a finding of abuse under section 707(b)(1).

### G. **Additional Considerations.**

Another concern the Court has in this case is the timing of the Debtors' petition. When determining whether to dismiss a case for abuse, the Court may look at the timing of the petition filing. In this case, prior to the petition date, Mr. Kerry Simms had proceeded to judgment on one of his lawsuits. This fact was disclosed by the Debtors in their Schedules. Therefore, the Court may conclude that given the fact that the Debtors had filed their petition shortly after Mr. Kerry Simms had obtained a judgment against them in his lawsuit reflects that the Debtors desired to stay the enforcement and/ or execution of that judgment. The foregoing further supports the Court's conclusion that the Debtors' filing of their petition constituted an abuse of the provisions of Chapter 7 of the Code.

The Court finds that the Debtors' failure to be forthright in their Schedules,

---

[13] See Exhibit 4.

[14] See Exhibit 7. Ms. Ashraf lists no income on her Schedules for 2005. Mr. Ashraf conceded at trial that the marital community received the funds, since he endorsed the check for her and placed it in the community deposit account.

9

1 including their decision not to include significant information, combined with the Debtors'
2 timing to file a bankruptcy petition shortly after a judgment has been obtained by one of their
3 creditors, reflect that based on the "totality of the circumstances" the Debtors' petition must be
4 dismissed as an abuse of Chapter 7.[15]

### IV. CONCLUSION

Based upon the foregoing, the Movants' Motion to Dismiss is GRANTED. The Court will execute a separate order dismissing this case under 11 U.S.C. § 707(b)(1), (b)(3)(B).

DATED this 30th day of March, 2007.

_____
HONORABLE SARAH SHARER CURLEY
United States Bankruptcy Judge

BNC to notice

---

[15] With its finding of abuse under the "totality of the circumstances" test, it is not necessary for the Court to address the "bad faith" prong of 11 U.S.C. 707(b)(3)(A). Presumably, in order to make such a finding of "bad faith," the Court would have to address In re Leavitt, 171 F.3d 1210 (9th Cir. 1999), and the factors set forth therein. Such an analysis would require a finding of "egregious behavior," which the Court is not prepared to make on this record.

10